UNITED STATES v. KLOTZ.

(Circuit Court, S. D. New York. November 15, 1904.)

No. 3,432.

1. CUSTOMS DUTIES—CLASSIFICATION—SILK ON COPS—ADVANCE IN MANUFACTURE.

Where raw silk has been re-reeled from skeins upon cops or tubes, this permitting the operation of doubling or twisting to be omitted in the process of finishing the silk, and thus bringing the article one step nearer the condition of finished silk, *held*, that this removes the article from the provision in paragraph 660, Tariff Act July 24, 1897, c. 11, § 2, Free List, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1688], for raw silk not "advanced in manufacture in any way," and brings it within the provision in paragraph 384 of said act, c. 11, § 1, Schedule L, 30 Stat. 185 [U. S. Comp. St. 1901, p. 1668], for "silk partially manufactured from cocoons, * * * and not further advanced or manufactured than carded or combed silk."

On Application for Review of a Decision of the Board of General Appraisers.

This application was made by the United States, and relates to a decision (G. A. 5,432, T. D. 24,702), which reversed the assessment of duty by the collector of customs at the port of New York on merchandise imported by Henry D. Klotz.

Note U. S. v. Stewart (C. C.) 133 Fed. 811.

D. Frank Lloyd, for appellant.

Albert Comstock, for appellee.

HAZEL, District Judge. This is a review from the decision of the Board of General Appraisers holding that the merchandise in controversy, consisting of raw silk wound on tubes or cops, is entitled to free entry under paragraph 660 of the tariff act of July 24, 1897, c. 11, § 2, Free List, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1688], which is in the following words: "Silk, raw, or as reeled from the cocoon, but not doubled, twisted, or advanced in manufacture in any way." The collector of customs of the port of New York assessed a duty of 40 cents per pound, under paragraph 384, § 1, Schedule L, of said act (30 Stat. 185 [U. S. Comp. St. 1901, p. 1668]), which reads as follows: "Silk partially manufactured from cocoons or from waste silk, and not further advanced or manufactured than carded or combed silk, forty cents per pound." The importers duly protested against such classification, claiming that the merchandise was raw silk, and not "raw silk partially manufactured from cocoons," nor "doubled, twisted, or advanced in manufacture in any way." The Board of General Appraisers, to whom the protest was transmitted, were not agreed as to the proper classification. The prevailing and dissenting opinions of the board exhaustively and comprehensively review the facts, and the reasons assigned therein for reaching diametrically opposite conclusions are worthy of careful consideration. The cogency and persuasiveness of the minority opinion, however, in which it is held that the winding of the silk on tubes or cops is an advance in manufacture, is thought to be controlling. The single inquiry presented is whether the silk was "advanced in manufacture." Ordinarily the trained officials of the customs department have little difficulty in determining questions of this character, but it must be admitted that the problem here has varying phases. The facts, briefly stated, are that the raw silk, as imported, had been re-reeled by machinery from skeins upon tubes or spools which were adapted to fit into a silk loom and immediately woven without further manipulation, instead of being imported in skeins, as was the custom. This method of importation on tubes or cops, according to the evidence, enables the artisan, technically called the "throwster," to begin the next essential step in the operation of finishing the raw product, namely, that of doubling or twisting, and he is thereby deprived from performing one of the necessary operations. The importer claims that the silk was wound on tubes or spools in Italy, the place of exportation, for convenience in transportation, and to lessen the expense of freight. The facts disclosed on the hearing before the board, however, establish that the raw silk, as imported, was, as stated in the minority opinion, intended "as a substitute for such on bobbins, and can, in every case where similar goods are used, be substituted for such, even upon the loom, which could not be done without this winding." This view finds support in the following testimony of the importer:

"Q. The labor cost of transferring the silk from the reel or skein to the tubes or spool is less in Italy than in this country? A. It would depend upon the given silk. Q. Given this silk? A. I should say yes."

The argument in behalf of the importer proceeded upon the theory that winding the silk on tubes or cops does not change its character from that of raw silk, and therefore the article, for tariff purposes, remains squarely within the provisions of the free list. To this contention I must withhold my assent. Though it is conceded that the physical status of the raw silk still attaches to the material after winding upon tubes or cops, it nevertheless clearly appears from the evidence that the American silk throwster is deprived of performing one of the operations necessary to finishing the raw product. Upon this point the importer testifies as follows:

"Q. Then I understand, as a matter of fact, this particular lot was put on tubes by means of some machine you sent to Italy? A. Yes. Q. You know exactly by what process? A. Yes. Q. How did it happen in this particular case—how is this silk put on these tubes? A. It is wound on the bobbin, and then from the bobbin or spool on these tubes. Q. Wound upon the bobbin from the skein? A. Yes. * * * Q. But as I understand you, the condition of advance is exactly the same as that when first reeled? A. Physically it is the same thing, but it fits the American machinery, and it is made more valuable."

These facts present insuperable objections to the contention of the importer that the article was not in any way advanced in manufacture. The witnesses for the government admit that the character of the silk is not changed, and that, if imported in skeins, as removed from the reel, it would be entitled to free entry. They maintain, however, that the silk, which has been reeled from the cocoon, and then wound on cops or tubes suitable to be placed in the loom, is not merely a process of re-reeling, but is an advance in manufacture. In order to obtain the commercial raw silk, the cocoon is soaked in heated water to soften the natural gum in the filament, and the raw fiber wound upon reels. In the raw state the nomenclature of the silk is divided into organzine, tram, and floss; each being twisted, spun, or treated according to the quality. In Dr. Ure's Dictionary of Arts, Manufacture & Mines, it is stated that the raw silk, as imported into the United States in skeins from the filatures, necessitates the process of throwing, the first step of which is winding of the skein, as imported, off onto bobbins. This is followed by doubling, twisting, and retwisting, as the case may require. If the raw silk may be wound on tubes, cops, or bobbins adapted to the machinery for weaving or finishing the product at the place where the filature is reeled from the cocoon, then manifestly the labor of the silk throwster is lessened, and the protection to home labor, which Congress undoubtedly intended to give, is diminished. A fair assumption is that Congress, when the tariff act was passed, understood that raw silk was commercially known as silk in skeins; it never having been imported in any other form. The testimony of the witnesses for the government as well as the importer shows that they had a similar understanding. This case is stated to be a test to determine the question here involved. True, Congress might have phrased paragraph 660 so that he who runs may read, and fully comprehend that raw silk in skeins or hanks only should come in free. But it did not do so, and the presumption is pertinent that Congress could not be expected to anticipate that,

in the development of the silk industry, an enterprising American citizen would find it to his pecuniary advantage to transfer machinery to the place of export to facilitate the winding of the raw fiber on tubes or spools suitable for use in the American machinery, instead of importing it as skeined from the reel.

No useful purpose will be served by further discussion of this interesting subject. The conclusion is that the importation was not entitled to free entry, but that it comes within the purview of the qualifying phrase, "advanced in manufacture in any way," and should be dutiable at 40 cents per pound, under paragraph 384.

The decision of the Board of General Appraisers is therefore reversed.