BRYANT & HEFFERNAN, INC., SCAP FOREIGN TRADE, NEW YORK *v.* UNITED STATES (No. 4819) [1]

---

[1] C. A. D. 591.

186

United States Court of Customs and Patent Appeals, April 28, 1955

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for appellant.
*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *Richard H. Welsh*, special attorneys, of counsel), for the United States.

[Oral argument December 8, 1954, by Mr. Donohue and Mr. Welsh]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

At issue in this appeal is the proper classification of certain merchandise which is agreed to be raw silk on cones, exported from Japan and entered at the port of New York in 1949. It was classified by the collector as "Yarns made from raw silk, nspf," under paragraph 1204 of the Tariff Act of 1930:

1204. Sewing silk, twist, floss, and silk threads or yarns of any description; made from raw silk, not specially provided for, 40 per centum ad valorem.

The importer protested that classification. The United States Customs Court, Second Division, C. D. 1603, overruled the collector and held the merchandise to be dutiable in accordance with the provisions of paragraph 1201:

1201. Silk partially manufactured, including total or partial degumming other than in the reeling process, from raw silk, waste silk, or cocoons, and silk noils exceeding two inches in length; all the foregoing, if not twisted or spun, 35 per centum ad valorem.

Appellants do not appeal from the court's action in overruling the collector's classification, but come here seeking a more favorable judgment under other provisions of the Tariff Act. Primary reliance here, as below, is placed on the provisions of paragraph 1763, which provides for free entry and reads:

1763. Silk, raw, in skeins reeled from the cocoon, or rereeled, but not wound, doubled, twisted, or advanced in manufacture in any way.

Alternative claims renewed by appellants are paragraphs 1211 and 1558 of the Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and read:

[1211] All manufactures, wholly or in chief value of silk, not specially provided for_____ 35% ad val.
[1558] All raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs)_____ 5% ad val.

Briefly stated, the record discloses that raw silk becomes an article of commerce in the following manner: After the dried cocoons are taken from storage they are inspected, sorted for quality, and placed on an endless chain in hot water to soften them for the reeling operation. They are then mounted in small wooden buckets, and again immersed in water in a reeling basin which generally contains 20 small aluminum reels approximately 8 inches in diameter. To obtain the desired denier, an appropriate number of cocoons are placed in combination, the filaments or threads from each cocoon are withdrawn simultaneously, passed through a small porcelain eyelet and run over a tension wheel. That process establishes uniform tension and results in a single thread which is reeled onto the aluminum reels. The reels are then removed from the reeling machine and transported to a rereeling room where the silk is rereeled from the aluminum reels to a large wooden collapsible reel having the diameter of a standard skein. When the desired amount of silk is thus rereeled, it is laced, the ends tied, the wooden reel collapsed, and the silk fashioned into skein form.

The record also shows that the instant merchandise is processed in the same manner up to its removal from the aluminum reel. At that point the silk is wound on paper cones as distinguished from the wooden reels.

It appears that when raw silk in skein form enters this country, additional steps are necessary before it is ready for use. Those steps, known as "throwing," generally involve "winding," "doubling," "twisting" and "re-twisting." One witness testified that the "throwing" processes, performed by an artisan known as a "throwster," include "winding, doubling, twisting, cone winding, spooling and soaking"; that any combination or sequence of those operations are considered throwing; that his company had processed raw silk (in skeins) by winding it, warping it, doubling it, twisting it, winding it on cones, winding it on quills or cops, and weaving it; and that such merchandise was not always treated prior to winding it on to spools, explaining that

If it were for certain purposes in warps it was wound dry and on to spools and from the spools it was drawn on to beams and it was then called a warp; it was then woven on a loom by the interlacing—by the weft into the warp which is what makes cloth.

It appears that when it is desired to "double" or "twist" raw silk in skein form, it is necessary to soak it in a solution of soap and oil to reduce its wiriness. However, if it is to be used for warping purposes the soaking can be and generally is dispensed with, although in both instances the silk must still be transferred from the skeins on to spools, bobbins, or the like, before it can be used on the silk-manufacturing machinery.

The record shows that when raw silk on cones as here, and as distinguished from raw silk in skeins, enters this country, it is readily adaptable for immediate use on certain types of silk-manufacturing machinery and is so used. Thus it is apparent that raw silk imported on cones eliminates some of the labor involved in the "throwing" processes required in connection with raw silk imported in skein form.

It is agreed that the instant merchandise is not "doubled" nor "twisted," and further agreed that if it were in skein form it would be entitled to free entry.

The Customs Court, in arriving at its decision, one member dissenting in part, relied on the case of *U. S.* v. *Klots*, 133 Fed. 808, T. D. 25790, affirmed, 139 Fed. 606, T. D. 26450, which arose under the provisions of the Tariff Act of 1897. The facts there are closely analogous to those here. Involved was raw silk which, prior to importation, had been wound from skeins on to tubes or cops. The silk in that form was classified under paragraph 384 of the Tariff Act of 1897, which corresponds to paragraph 1201 of the present act, and, so far as pertinent, read:

384. Silk partially manufactured from cocoons or from waste silk, and not further advanced or manufactured then carded or combed silk * * *.

The importer claimed free entry under paragraph 660 of the act of 1897, which read:

660. Silk, raw, or as reeled from the cocoon, but not doubled, twisted, or advanced in manufacture in any way.

The Board of General Appraisers, one member dissenting, granted free entry under that paragraph, stating *inter alia* that "If Congress intended that raw silk covered by this paragraph should come in only in skeins, it could have so legislated." Upon appeal that judgment was reversed by the Circuit Court, and the latter action affirmed by the Circuit Court of Appeals.

The appellate court was of the opinion that the "winding" of the silk on tubes or cops constituted an advance in manufacture within the meaning of paragraph 660, adding that the silk as imported, "had been re-reeled by machinery from *skeins* upon tubes or spools which were adapted to fit into a silk loom and immediately woven without further manipulation, instead of being imported in *skeins*, as was the custom." (Italics supplied.)

In answer to the argument of the importer that mere winding of the silk on tubes or cops did not change its character from raw silk, the court said: " * * * it nevertheless clearly appears from the evidence that the American silk throwster is deprived of performing one of the operations necessary to finishing the raw product." The court also observed that " * * * A fair assumption is that Congress, when the tariff act was passed, understood that raw silk was commercially known as silk in skeins; it never having been imported in any other form."

A case cited by appellants is *U. S.* v. *Stewart,* 133 Fed. 811, T. D. 25898. That involved raw tussah silk which had been *"wound* on large reels when taken from the cocoons, [and] it became necessary to *rereel* it in order to produce *skeins* of a suitable size for use in American machines." (Italics supplied.)

In allowing free entry under paragraph 660, T. D. 25524, G. A. 5767, a majority of the Board of General Appraisers stated:

We find that the merchandise here in question consists of raw tussah silk, which has not been doubled, twisted, *or advanced in manufacture in any way,* but is in the condition in which it came from the cocoons, having merely been *transferred* from the large reels on which it was taken from the cocoon to smaller reels, in order to adapt the *skeins* thus produced to the American spinning machines. (Italics supplied.)

Again the same member dissented for the same reasons advanced in the *Klots* case, *supra.* Upon appeal the Circuit Court affirmed without opinion.

Assuming, as urged by appellants, the *Stewart* case provides a precedent for free entry of the instant merchandise, the fact remains that the decisions in the *Klots* case were handed down in 1904 and 1905, and those in the *Stewart* case in 1904. Both decisions were known to Congress when it amended paragraph 660. As amended, it first appeared in the Tariff Act of 1909, and is identical with paragraph 1763 of the Tariff Act of 1930, which reads:

1763. Silk, raw, in skeins reeled from the cocoon, or rereeled, but not wound, doubled, twisted, or advanced in manufacture in any way.

Other contentions advanced by appellants in support of their position that Congress, in amending paragraph 660, intended to allow free entry to merchandise such as that at bar include the punctuation marks of the new paragraph, as well as statutory construction in light of *F. H. Von Damm* v. *United States,* 70 Treas. Dec. 214, 221, T. D. 48485. All of the contentions advanced have been considered, and, while they are ably presented and to a degree persuasive, when viewed against the entire background of the evidence of record, they fall far short of convincing us that the Customs Court erred in refusing to enlarge the judgment of the *Klots* case, or in classifying the instant merchandise as it did.

Clearly, had Congress intended to *broaden* the scope of the *Klots* decision, it would not have done so by adding such limiting words as "in skeins." Appellants readily agree the merchandise at bar is not in that form.

Moreover, Congress, in adding the word "wound" obviously intended to distinguish between the "reeled," and "re-reeled" manipulations mentioned in the old paragraph, and to deny free entry to raw silk which had been "wound."

In their brief, appellants state that the Customs Court did not hold that the instant merchandise was "wound," but rather that it was excluded from paragraph 1763 because it was not in skeins. We find it difficult to reconcile that reasoning with the evidence submitted by the Government on that point and the following excerpt from the *Klots* case quoted with approval by the Customs Court:

\* \* \* We regard the *winding* as an advance in the manufacture of raw silk. The raw silk of the importations has been advanced to the same extent. It is true that the thread resulting *does not differ in conformation, physical characteristics, or genus* from the raw silk of skeins; but nevertheless it has been advanced *a stage in* preparation for its ultimate use, and although it is still raw silk, it is not the raw silk of the paragraph "not advanced." (Italics quoted.)

The evidence offered by appellants fails to show that Congress intended the term "wound" to have a different meaning.

Again referring to the *Klots* case, it was there said, and we deem it apposite here:

\* \* \* If it be conceded that they [importations of raw silk wound on cops] have not been manufactured into a new and different article having a distinctive name, *they have nevertheless been advanced into an article having a new and different use, and consequently they are raw silk in an advanced state.* (Italics supplied.)

Inasmuch as we find no error by the Customs Court in denying free entry to the instant merchandise, nor in classifying it within the provisions of paragraph 1201, *supra*, it is not necessary to discuss the other paragraphs suggested by appellants.

The judgment is *affirmed.*